UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
MOHAMED ELGHOURAB,                                            :
                                                              :
                              Plaintiff,                      :   Case No. 17-CV-00911 (ARR)(ST)
                                                              :
                    -against-                                 :
                                                              :
VISTA JFK, LLC,                                               :
                                                              :
                              Defendant.                      :
                                                              :
                                                              :
                                                              :
                                                              :
------------------------------------------------------------- X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


### GORDON REES SCULLY MANSUKHANI, LLP
ATTORNEYS FOR DEFENDANT
ONE BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ..............................................................................2

LEGAL ARGUMENT ......................................................................................2

    I.       SUMMARY JUDGMENT STANDARD OF REVIEW ...................................2

    II.      PLAINTIFF'S OVERTIME CLAIMS FAIL AS A MATTER OF LAW
             BECAUSE HE WAS EXEMPT UNDER THE EXECUTIVE
             EXEMPTION OF THE FLSA AND NYLL .........................................................3

             A.      At all times, Plaintiff was compensated on a salary basis in excess
                    of the threshold salary requirements of the FLSA and NYLL....................6

             B.      Plaintiff's primary duty was management of the hotel's kitchen. ..............7

                    (1)     Relative Importance ...................................................................11

                    (2)     Time Spent Performing Exempt Work .........................................12

                      (3)     Relative Freedom from Direct Supervision .................................15

                      (4)     Relationship to Wages Paid to Other Employees for
                              Performance of Non-Exempt Work ..............................................16

             C.      Plaintiff's position as Executive Chef required him to regularly and
                    customarily direct the work of the kitchen staff. ......................................17

              D.      Plaintiff's suggestions and recommendations as to the hiring and
                    firing of kitchen employees were given particular weight.........................18

    III.     PLAINTIFF'S STATUTORY CLAIM FOR WAGE NOTICE
             VIOLATION UNDER NYLL FAILS AS A MATTER OF LAW
             BECAUSE PLAINTIFF ADMITS THAT HE TIMELY RECEIVED ALL
             WAGES OWED TO HIM ................................................................................19

CONCLUSION...............................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

<u>Alberti v. Cnty. of Nassau</u>
393 F. Supp. 2d 151 (E.D.N.Y. 2005) ...................................................................... 5

<u>Celotex v. Catrett</u>
477 U.S. 317 (1986)................................................................................................... 2

Clougher v. Home Depot U.S.A., Inc.
696 F. Supp. 2d 285 (E.D.N.Y. 2010) ...................................................................... 4

<u>Coppola v. Bear Stearns & Co.</u>
499 F.3d 144 (2d Cir. 2007) ................................................................................ 2, 3

Cross Commerce Media, Inc. v. Collective, Inc.
841 F.3d 155 (2d Cir. 2016) .................................................................................... 3

Donovan v. Burger King Corp.
672 F.2d 221 (1st Cir. 1982)................................................................................... 13

<u>Donovan v. Burger King Corp.</u>
675 F.2d 516 (2d Cir. 1982) ................................................................................... 11

Eastman Kodak Co. v. Image Tech. Servs., Inc.
504 U.S. 451 (1992)................................................................................................. 3

El-Nahal v. Yassky
835 F.3d 248 (2d Cir. 2016) .................................................................................... 3

Gemmink v. Jay Peak Inc.
807 F.3d. 46 (2d Cir. 2015) ..................................................................................... 3

Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.)
637 F.3d 508 (4th Cir. 2011) .................................................................................. 13

Hicks v. Baines
593 F.3d 159 (2d Cir. 2010) .................................................................................... 3

Jackson v. Advance Auto Parts. Inc.
362 F. Supp. 2d 1323 (N.D. Ga. 2005) .............................................................. 13, 14

<u>Krumholz v. Vill. of Northport</u>
873 F. Supp. 2d 481 (E.D.N.Y. 2012) ...................................................................... 5

<u>Martinez v. Hilton Hotels Corp.</u>
930 F. Supp. 2d 508 (S.D.N.Y. 2013) ...................................................................... 4

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

Pippins v. KPMG, LLP
   759 F.3d (2d Cir. 2014) .................................................................................... 5

Ramos v. Baldor Specialty Foods, Inc.
   687 F.3d 554 (2d Cir. 2012) ............................................................................ 5

Ridinger v. Dow Jones & Co. Inc.
   651 F.3d 309 (2d Cir. 2011) ............................................................................ 3

Scott v. SSP Am., Inc.
   No. 09-CV-4399, 2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011).............. 11, 13, 14

Tamayo v. DHR Rest. Co., LLC
   No. 14-CV-9633 (GBD), 2017 U.S. Dist. LEXIS 18102 (S.D.N.Y. Feb 3, 2017).................. 11

Weinstock v. Columbia Univ.
   224 F.3d 33 (2d Cir. 2000) .............................................................................. 3

Wright v. Goord
   554 F.3d 255 (2d Cir. 2009) ............................................................................ 3

Yesmin v. Rite Aid of N.Y. Inc.
   No. CV 10-4157(ERK)(RER), 2012 US Dist LEXIS 127655 (E.D.N.Y. Sep 6, 2012)............ 7

**Statutes**

12 NYCRR § 142-2.14 ........................................................................................ 6

29 U.S.C. § 201 ................................................................................................ 4

29 U.S.C. § 207 ................................................................................................ 4

29 U.S.C. § 213 ................................................................................................ 4

NYLL § 195 .............................................................................................. 1, 2, 19, 20

NYLL § 198 ................................................................................................ 2, 20

NYLL § 651 ................................................................................................ 4

**Rules**

Federal Rules of Civil Procedure
   Rule 56 .................................................................................................. 2, 3

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

Local Civil Rule
    Rule 56.1 ................................................................................................................... 2

**Treatises**

29 C.F.R. § 41.105 ................................................................................................... 18

29 C.F.R. § 541.100 ....................................................................................... 5, 17, 18

29 C.F.R. § 541.102 ............................................................................................. 7, 11

29 C.F.R. § 541.106 ........................................................................................ 8, 13, 14

29 C.F.R. § 541.700 ................................................................................... 7, 8, 11, 13

## PRELIMINARY STATEMENT

Plaintiff Mohamed Elghourab ("Plaintiff" or "Elghourab") was employed by Defendant as Executive Chef from September 2011 through September 2016. See Complaint, Exhibit A, at ¶ 5. Plaintiff brings this action for overtime wages allegedly owed to him under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendant Vista JFK, LLC ("Defendant" or "Vista").  Specifically, Plaintiff alleges that he worked between 70 and 84 hours each week, for five years, and was wrongfully denied overtime wages, in violation of the FLSA and NYLL. See Complaint, Exhibit A, at ¶ 21, 26-27. Additionally, Plaintiff brings a statutory claim for a wage notice violation under NYLL § 195(1), alleging that Defendant failed to provide Plaintiff with a notice of his rate of pay. See Complaint, Exhibit A, at ¶ 56.

Defendant now moves for complete summary judgment, dismissing all of the claims asserted against it in Plaintiff's Complaint as a matter of law.  First, Defendant is entitled to summary judgment as to the overtime claims contained in Counts I and II because, at all times relevant to the instant action, Plaintiff's employment was exempt from the overtime provisions of the FLSA and NYLL under the executive exemption. Here, the record demonstrates that Plaintiff was in charge of the kitchen department, and was responsible for the overall operation and continued success of the kitchen. As Executive Chef, Plaintiff was the manager of the kitchen, directing the work of all kitchen staff members—i.e., the line cooks, dishwashers, and the sous-chef—and reporting directly the hotel's General Manager. Plaintiff regularly performed managerial functions such as taking inventory and ordering all food and supplies for the kitchen, approving leave requests, writing the weekly schedules, verifying the accuracy of payroll records, and interviewing and selecting candidates for vacant positions. At all times, Plaintiff's primary role was that of a manager, and thus, he was exempt from the overtime provisions of the FLSA and NYLL.

1

Second, Defendant is similarly entitled to summary judgment on Plaintiff's statutory wage notice claim. Pursuant to NYLL 198 (1-b), a complete affirmative defense to the wage notice claim asserted under NYLL 195 (1) exists where an employer can prove that it made timely payment of all wages that were due to the employee. In the instant case, Plaintiff himself has admitted that his wages were always paid timely and were always in the full and correct amount owed to him.

Accordingly, for the reasons set forth herein, Defendant is entitled to summary judgment with respect to all of the claims asserted in this matter, and Plaintiff's Complaint must be dismissed in its entirety.

## FACTUAL BACKGROUND

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Defendant's Statement of Undisputed Material Facts ("DSMF") Pursuant to Local Civil Rule 56.1, dated July 27, 2018, which has been filed contemporaneously herewith.

## LEGAL ARGUMENT

**I.      SUMMARY JUDGMENT STANDARD OF REVIEW**

The purpose of summary judgment is to isolate and terminate claims that are factually unsupported so as to avoid costly and unnecessary trials.  See Celotex v. Catrett, 477 U.S. 317, 322 (1986).  As such, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c)(2).  In this context, a particular fact will be deemed "material" only if its existence or non-existence would "affect the outcome of the suit under governing law."  Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007) (citation and internal quotations omitted).  Likewise, an

issue will only be considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Id. (citation and internal quotations omitted). Thus, for factual issues to be considered genuine, they must have a real basis in the record. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). If the moving party makes this initial showing, the burden then shifts to the opposing party to establish a genuine dispute of material fact. El-Nahal v. Yassky, 835 F.3d 248, 256 (2d Cir. 2016). More specifically, once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in [Rule 56], must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

## II.   PLAINTIFF'S OVERTIME CLAIMS FAIL AS A MATTER OF LAW BECAUSE HE WAS EXEMPT UNDER THE EXECUTIVE EXEMPTION OF THE FLSA AND NYLL

In the Complaint, Plaintiff makes perfunctory, unsupported allegations that he was

subject to the overtime provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). See Complaint, Exhibit A, at ¶¶ 29, 40, 53. However, the undisputed evidence in this action demonstrates that Plaintiff was exempt from the overtime provisions of those statutes, pursuant to the executive exemption. As such, there is no genuine issue of material fact which would preclude summary judgment in favor of Defendant as to Plaintiff's claims for overtime under the FLSA and NYLL.

Under the FLSA, employers must pay employees, subject to certain exceptions, overtime compensation for all time worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Similarly, New York has adopted regulations which mirror the federal wage law and, as such, overtime claims made under the NYLL are to be analyzed under the rubric applicable to claims under the FLSA. See Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) ("Because New York's overtime provisions mirror and/or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., and its attendant regulations, set forth in the Code of Federal Regulations.") (quoting Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 289 n.5 (E.D.N.Y. 2010)). Both the FLSA and the NYLL provide a categorical exemption for employees who, *inter alia*, work in a "bonda fide executive, administrative, or professional capacity." See 29 U.S.C. 213(a)(1); N.Y. Lab. Law. 651(5)(c).[1]

The exemptions under the FLSA are to be narrowly construed, and the "employer bears the burden of proving that its employees fall within an exempted category of the Act." Ramos v.

---

[1] As courts typically address exemptions to overtime violations under the FLSA and NYLL together, for brevity, Defendant will analyze the executive exemption as applied to Plaintiff under the rubric of the FLSA (Count I) and incorporates by reference this analysis for application to the NYLL (Count II). See Ramos, 687 F.3d at 556 n.1 (declining to engage in a separate analysis of NYLL claims because "like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the FLSA'") (citation omitted).

Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). The FLSA does not define "bona fide executive, administrative, or professional" employment, and instead directs the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations." Id. at 559. The applicable federal regulation in this matter provides that the executive exemption applies to employees who satisfy the following four criteria:

> (1) Compensated on a **salary basis** at a rate of not less than $455 per week; (2) Whose **primary duty is management** of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly **directs the work** of two or more other employees; and (4) Who has the **authority to hire or fire** other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis supplied).[2]

The determination as to whether an employee is exempt under the FLSA is "a mixed question of law and fact." Pippins v. KPMG, LLP, 759 F.3d 235, 239 (2d Cir. 2014) (citation omitted). "The question of how the employees spent their working time is a question of fact," whereas "[t]he question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." Id; see also Krumholz v. Vill. of Northport, 873 F. Supp. 2d 481, 487 (E.D.N.Y. 2012) ("[I]t is a strict question of law whether the activities and responsibilities of the employee, once established, exempt him or her from the FLSA's overtime requirements.") (quoting Alberti v. Cnty. of Nassau, 393 F. Supp. 2d 151, 174 (E.D.N.Y. 2005)).

---

[2] The NYLL's executive employee exemption is interpreted similarly to the FLSA exemption, except that: (1) the minimum salary required to qualify for the exemption is $825 per week; and (2) the employee customarily and regularly exercises discretionary powers. 12 NYCRR § 142-2.14(c)(4)(i)(a-e).

In the instant case, the undisputed facts clearly establish that Plaintiff qualified for the executive exemption under the FLSA and the NYLL for the entirety of his employment with Defendant.

    **A. At all times, Plaintiff was compensated on a salary basis in excess of the threshold salary requirements of the FLSA and NYLL.**

       The FLSA's requirement that Plaintiff be compensated on a salary basis at a rate of not less than $455 per week is easily met in the instant case. First, it is undisputed that Plaintiff was compensated on a salary basis. See DSMF at ¶¶ 53-55; 2014 PAF, Exhibit K; Plaintiff's Deposition, Exhibit B, at 37; Miller Deposition, Exhibit D, at 276-78; Berrones Deposition, Exhibit E, at 122. Second, throughout the entirety of Plaintiff's employment with Defendant, his salary was in excess of the FLSA's minimum salary requirement: Plaintiff's starting annual salary was $55,000.00 (or $1,057.69 per week); on or about May 30, 2014, Plaintiff's salary was increased to $65,000.00 (or $1,250.00 per week); and on or about March 5, 2016, Plaintiff's salary was again increased to $69,000.00 (or $1,326.92). Id. Additionally, Plaintiff was eligible for, and on multiple occasions received, quarterly bonuses in addition to his annual salary. DSMF at ¶¶ 57, 59, 60, 62, 63; Executive Chef Bonus Program Notice, Exhibit M; Plaintiff's Deposition, Exhibit B, at 150-51; Miller Deposition, Exhibit D, at 274-76; 2013 Payroll Register, Exhibit P; 2014 Payroll Register, Exhibit Q; 2015 Payroll Register, Exhibit R; 2016 Payroll Register, Exhibit S.

       Similarly, the salary requirement is also met under the NYLL, which requires a minimum salary of $825 per week. See 12 NYCRR § 142-2.14. Based on the above analysis, Plaintiff met this threshold salary requirement throughout the entirety of his tenure in Defendant's employ. See DSMF at ¶¶ 53-55; 2014 PAF, Exhibit K; Plaintiff's Deposition, Exhibit B, at 37; Miller Deposition, Exhibit D, at 276-78; Berrones Deposition, Exhibit E, at 122.

**B.  Plaintiff's primary duty was management of the hotel's kitchen.**

In analyzing this second prong of the executive exemption, it is important to understand not only how courts determine what may be considered an employee's "primary duty" under the FLSA, but also to understand the types of duties that are indicative of "managing."

The term "managing" in the context of the executive exemption encompasses a broad range of activities, including but not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Importantly, to qualify for the exemption the plaintiff need only perform *some* of these types of managerial duties. See, e.g., Yesmin v. Rite Aid of N.Y. Inc., No. CV 10-4157(ERK)(RER), 2012 US Dist LEXIS 127655, at *1 (E.D.N.Y. Sep 6, 2012). Moreover, the regulation itself recognizes that these are merely examples of "management," and are not exhaustive of the types of duties that may be considered. 29 C.F.R. § 541.102.

Once it is established that a plaintiff regularly performed managerial duties, the question then becomes whether the above-described management activities were in fact the main function of the plaintiff's position. The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In determining an employee's primary duty, a court must consider all the facts in a case, "with the major emphasis on the character of the employee's job as a whole." Id. The CFR identifies a list of non-

exhaustive factors that a court should consider in determining the employee's primary duty, including: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. Id.

Because "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption," 29 C.F.R. § 541.106(a), the code provides some illustrative examples of exempt executives who perform nonexempt work while discharging their duties. The code explains, for example, that an assistant manager in a retail establishment is not precluded from the exemption even if he performs nonexempt tasks, "such as serving customers, cooking food, stocking shelves and cleaning the establishment . . . if the assistant manager's primary duty is management." 29 C.F.R. § 541.106(b). The nonexempt tasks, such as serving customers and stocking shelves, can occur contemporaneously with supervising employees and directing their work. Id.

The difference between an exempt executive and a nonexempt employee is that the former makes "the decision regarding when to perform nonexempt duties and remain[s] responsible for the success or failure of business operations under their management while performing the nonexempt work." 29 C.F.R. § 541.106(a). The nonexempt employee, on the other hand, "generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods." Id. Thus, assistant managers who perform exempt management work less than 50% of the time, and are "closely supervised and earn little more than the nonexempt employees ... generally would not satisfy the primary duty requirement." 29 C.F.R. § 541.700(c).

In the instant case, the record evidence demonstrates that Plaintiff's primary duty as Executive Chef was managing the hotel kitchen. While Plaintiff may also have performed some non-exempt tasks in conjunction with his managerial responsibilities, it was Plaintiff, not another supervisor, who ultimately decided whether he would perform these non-exempt tasks and when.

Looking first at Plaintiff's managerial duties, the undisputed evidence establishes that Plaintiff performed a number of duties that are indicative of "management," including:

- reviewing and verifying time records of all kitchen employees for processing payroll [DSMF at ¶¶ 37, 42, 43, 82; Plaintiff's Deposition, Exhibit B, at 65-66; Berrones Deposition, Exhibit E, at 28, 33];

- holding weekly meetings with the HR Manager to discuss payroll for kitchen employees [DSMF at ¶¶ 43, 44; Berrones Deposition, Exhibit E, at 34-36];

- creating weekly tip reports (for tips received by servers, bartenders, etc.) based on the kitchen's prior week's sales [DSMF at ¶ 45; Berrones Deposition, Exhibit E, at 36-38];

- attending weekly hotel management meetings (on behalf of the kitchen) with the heads of other departments [DSMF at ¶¶ 32, 46; Plaintiff's Deposition, Exhibit B, at 96-97; Berrones Deposition, Exhibit E, at 133, 138; Miller Deposition, Exhibit D, at 176-177; Manager Meeting Minutes, Exhibit H];

- interviewing and otherwise weighing in on potential new hires in his department [DSMF at ¶¶ 34, 72-74; Executive Chef Job Description, Exhibit I; Plaintiff's Deposition, Exhibit B, at 110-14; Berrones Deposition, Exhibit E, at 72-74, 90-91; December 19, 2014 Email, Exhibit U; Miller Deposition, Exhibit D, at 120-21, 209-10];

- planning, organizing, and launching the galley, including deciding what items would be offered, and communicating to the kitchen staff regarding what items to prepare [DSMF at ¶ 76; Plaintiff's Deposition, Exhibit B, at 97-101; December 5, 2014 Email, Exhibit W];

- purchasing all food to be served at the hotel restaurant, including taking inventory and determining what food was needed [DSMF at ¶ 75; Plaintiff's Deposition, Exhibit B, at 103, 183, 259-60; Purchase Orders, Composite Exhibit V];

- reviewing and maintaining an inventory of the food and supplies used in the kitchen [DSMF at ¶ 75; Plaintiff's Deposition, Exhibit B, at 103, 183, 259-60; Purchase Orders, Composite Exhibit V];

- creating the weekly schedule for kitchen staff and, at times, the entire restaurant [DSMF at ¶ 79; Berrones Deposition, Exhibit E, at 96-97; May 7, 2016 Email, Exhibit X; May 23, 2016 Email, Exhibit Y; May 25, 2016 Email, Exhibit Z];

- reviewing and determining whether to approve or deny requests for vacation and other leaves requested by kitchen and restaurant staff [DSMF at ¶ 81; Plaintiff's Deposition, Exhibit B, at 124-25; Leave Requests, Exhibit AA];

- preparing for inspections of the kitchen and providing advance notice to staff of when the inspections were to occur [DSMF at ¶ 83; Plaintiff's Deposition, Exhibit B, at 79].

- overseeing the kitchen staff and providing instruction on food preparation [DSMF at ¶¶ 64, 68; Plaintiff's Deposition, Exhibit B, at 45-49, 159-60, 262-64; Miller Deposition, Exhibit D, at 116-18; F&B Schedules, Exhibit T].

Moreover, like other department heads, Plaintiff was ultimately responsible for the overall success of his department, and reported directly to the hotel's General Manager.[3] DSMF at ¶¶ 18, 52; Berrones Deposition, Exhibit E, at 103, 120-21, 161; Radisson Department Organizational Chart, Exhibit F; Miller Deposition, Exhibit D, at 75. Relatedly, Plaintiff did not have a set schedule and he alone decided when he needed to be on the premises and for how long. DSMF at ¶ 80; Plaintiff's Deposition, Exhibit B, at 60; Miller Deposition, Exhibit D, at 115. Thus, Plaintiff cannot possibly dispute that he engaged in numerous management functions recognized by 29 C.F.R. § 541.102.

Next, the Court must determine whether the above-described managerial duties were Plaintiff's "primary duty" within the meaning of the statute. Again, the undisputed evidence in this case clearly establishes that these management functions were Plaintiff's "primary duty," as defined by 29 C.F.R. § 541.700(a).

*(1) Relative Importance*

Looking first at the relative importance of the Executive Chef's duties, the Second Circuit has stated that the relative importance inquiry evaluates whether the restaurant could not operate successfully unless the purported managerial functions assigned to Executive Chef were performed. See Tamayo v. DHR Rest. Co., LLC, No. 14-CV-9633 (GBD), 2017 U.S. Dist. LEXIS 18102, at *15 (S.D.N.Y. Feb 3, 2017) (citing Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982); Scott v. SSP Am., Inc., No. 09-CV-4399, 2011 U.S. Dist. LEXIS 32819, at *9 (E.D.N.Y. Mar. 29, 2011)). This standard is easily satisfied in this case, as without Plaintiff determining what food and other supplies were needed, ordering those supplies on a

---

[3] Notably, during Plaintiff's tenure as Executive Chef with Crowne Plaza (prior to coming to work for Defendant), Plaintiff also reported directly to the General Manager. DSMF at ¶ 50, 51; Plaintiff's Deposition, Exhibit B, at 34; Employment Application, Exhibit C, at 2.

regular basis, and setting the weekly schedules, the restaurant would have come to a grinding halt. Simply put, if there is no food or sufficient employees to prepare and serve it, there can be no restaurant sales and, in turn, no revenue being generated by the department. Clearly, Plaintiff's managerial duties were of the utmost importance to the continued operation of the kitchen.

Moreover, as set forth in his performance evaluation, Plaintiff was evaluated based on his performance of managerial functions, not the nonexempt tasks reserved for non-managerial staff members. DSMF at ¶¶ 57, 84; Executive Chef Bonus Program Notice, Exhibit M; Plaintiff's Deposition, Exhibit B, at 150-51; Miller Deposition, Exhibit D, at 274-76; Performance Evaluation, Exhibit BB. Additionally, Plaintiff was eligible for, and received, periodic bonuses based on the overall performance of his department. Id; see also DSMF at ¶¶ 59, 60, 62, 63; 2012 Payroll Register, Exhibit O; 2013 Payroll Register, Exhibit P; 2015 Payroll Register, Exhibit R; 2016 Payroll Register, Exhibit S]. Thus, Plaintiff's success was measured by his performance of managerial functions, thus underscoring the relative importance of those functions vis-à-vis the occasional non-managerial tasks.

### (2) Time Spent Performing Exempt Work

With respect to the second factor, the undisputed evidence demonstrates that Plaintiff's exempt duties were regular and re-occurring management functions that Plaintiff performed on a daily basis. See e.g., DSMF at ¶¶ 32, 44-46, 75, 79, 82; Plaintiff's Deposition, Exhibit B, at 65-66, 96-97, 259-60; Miller Deposition, Exhibit D, at 176-177; Berrones Deposition, Exhibit E, at 34-38, 96-97, 133; Manager Meeting Minutes, Composite Exhibit H; Purchase Orders, Composite Exhibit V; May 7, 2016 Email, Exhibit X; May 23, 2016 Email, Exhibit Y; May 25, 2016 Email, Exhibit Z.

Moreover, courts have recognized that the exact amount of time that a plaintiff spent on non-exempt work is not dispositive of whether his "primary duty" was management. See 29 C.F.R. § 541.700 ("[t]ime alone . . . is not the sole test"); see also Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.), 637 F.3d 508, 517 (4th Cir. 2011) ("We conclude that [plaintiff] was performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation."); Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982) ("one can still be 'managing' if one is in charge, even while physically doing something else. ... [A]n employee can manage while performing other work, and ... this other work does not negate the conclusion that his primary duty is management."); Scott v. SSP Am., Inc., No. 09-CV-4399, 2011 U.S. Dist. LEXIS 32819, at *8 (E.D.N.Y. Mar. 29, 2011) (although the Court credited plaintiffs testimony that she spent 90% of her time performing non-exempt tasks, the Court found that her "management duties were more important to the success of [d]efendant's business than her other duties" where she "continued to supervise her subordinates by 'multi task[ing]'"); Jackson v. Advance Auto Parts. Inc., 362 F. Supp. 2d 1323,1335 (N.D. Ga. 2005) (granting summary judgment to employer despite plaintiffs' testimony that they spent 90% of their time performing non-exempt work because "[p]laintiffs acknowledged at their depositions that while they were selling to customers, operating the register, or performing other incidental tasks, they were also still overseeing the other employees in the store and making sure that the store was operating properly"). Rather, the focus is on whether the employee "remain[s] responsible for the success or failure of business operations under their management while performing the nonexempt work." 29 C.F.R. § 541.106(a).

Undeniably, in a commercial kitchen, when the Executive Chef decides that the restaurant is so busy he must help the line cooks prepare the food, that decision is *motivated by* the fact that the Executive Chef is concerned with the success of his kitchen. Moreover, the decision to engage in such non-exempt work is at all times left up to the Executive Chef, in this case the Plaintiff, as there is no supervisor in the kitchen to tell Plaintiff when he needed to help with food preparation, or run food, or perform some other task. While preparing food or engaging in other non-exempt tasks, at all times Plaintiff, as the Executive Chef, remained ultimately responsible for the success of his kitchen. As such, the instant case is reminiscent of the prototypical example of the "assistant manager" contained in the Code itself. 29 C.F.R. 541.106(b).

Plaintiff will likely attempt to create the appearance of a dispute on this point by arguing that he was actually engaged in mostly non-exempt duties. However, the law is clear that performance of such non-exempt duties is not inconsistent with the executive exemption, as managers often are required to multi-task and/or "jump in" to perform whatever needs to be done to ensure the overall profitability and success of their department. See Scott, 2011 U.S. Dist. LEXIS 32819, at *8; Jackson, 362 F. Supp. at 1335. Rather, the inquiry turns on whether the plaintiff-employee himself decided to undertake these duties, as opposed to being told to do so by a higher-ranking supervisor. Thus, to the extent Plaintiff may have actually prepared food along with the line cooks, or served food along with the bussers/runners, or cleaned alongside the dishwashers/stewards, performance of these duties does not negate a conclusion that his primary duty was management, as it was Plaintiff, not some other supervisor, who determined which such tasks needed to be performed and when.

Moreover, because the restaurant staff, with the exception of the Executive Chef and Food and Beverage Manager, was comprised entirely of union employees, Plaintiff was actually precluded from performing nonexempt work on a regular basis. Notably, according to Plaintiff's own testimony, on multiple occasions, the union intervened and instructed Plaintiff not to perform the work of union members. See DSMF at ¶ 87; Plaintiff's Deposition, Exhibit B, at 97-98; 240. As set forth in the Collective Bargaining Agreement, non-union members are not categorically prohibited from performing duties of union members, "provided … the work is not of a sufficient amount to justify hiring a full or regular part time bargaining unit employee." See DSMF at ¶ 87 (CBA, Exhibit CC, at 14). In other words, if Plaintiff's primary function was the performance of union work, then he would have been required to join the union.

### (3) Relative Freedom from Direct Supervision

Plaintiff, along with the other members of the hotel's management team, reported directly to the General Manager of the hotel. DSMF at ¶¶ 18, 52; Berrones Deposition, Exhibit E, at 103, 120-21, 161; Radisson Department Organizational Chart, Exhibit F; Miller Deposition, Exhibit D, at 75. Thus, there was no one in physical proximity to Plaintiff who supervised his work. Rather, at all times, Plaintiff performed his duties relatively free from supervision. As Plaintiff stated in his deposition, "It's only me, … there is no manager." See Plaintiff's Deposition, Exhibit B, at 159-60. By way of example, Plaintiff was solely responsible for determining what food and supplies were needed for the food being served at the restaurant, as well as any food or other supplies required for banquets, and for making the necessary purchase orders. DSMF at ¶ 75; Plaintiff's Deposition, Exhibit B, at 103, 183, 259-60. There was no intermediate supervisor who directly oversaw or ensured that Plaintiff performed these duties; rather, his position, along with the rest of the management team, was subject only to general oversight by the General

Manager for the entire hotel. DSMF at ¶¶ 18, 52; Berrones Deposition, Exhibit E, at 103, 120-21, 161; Radisson Department Organizational Chart, Exhibit F; Miller Deposition, Exhibit D, at 75.

*(4) Relationship to Wages Paid to Other Employees for Performance of Non-Exempt Work*

The rates of compensation for kitchen staff members, who perform non-exempt work in the kitchen such as cooking and cleaning, are generally governed by the terms of a collective bargaining agreement between Defendant and the Union. DSMF at ¶ 32. Under the terms of that and other agreements with the Union, the kitchen staff is compensated at a pre-determined rate for 35 hours each week. DSMF at ¶ 38 (Berrones Deposition, Exhibit E, at 30). Plaintiff was compensated at a substantially higher rate than that paid to the line cooks who reported to him. Using an employee who was employed as a line cook during the relevant period as an example, the line cook was paid between $24.08 - $24.99 per hour for approximately 35 hours each week during the relevant period. DSMF at ¶ 38; Payroll Register for line cook, Composite Exhibit J). In effect, this means that the line cook would receive between $842.80 - $874.65 each week for performance of non-exempt work, while Plaintiff was compensated at a rate of $1,057.69 - $1,326.92 each week. See DSMF at ¶¶ 32, 45. At the end of Plaintiff's employment, when his salary was at its highest, this means that Plaintiff was paid approximately $23,518.20 more annually than the line cook position.[45] This drastic disparity in compensation supports the

---

[4] Even when the line cook would work an overtime shift, his overall compensation as a line cook was still substantially less than that paid to Plaintiff as Executive Chef; by way of example, in 2015, including the handful of overtime shifts that the line cook worked (for which he was paid at the overtime rate of 1.5 times his hourly wage), the line cook's total annual compensation was $51,682.04. See Payroll Register for line cook, Composite Exhibit J, at 18. During this same period, Plaintiff was compensated on an annual salary basis of $65,000.00. DSMF at ¶ 54; 2014 PAF, Exhibit K; Miller Deposition, Exhibit D, at 276; Berrones Deposition, Exhibit E, at 122. As such, even accounting for overtime wages paid to the line cook, Plaintiff was paid an additional $13,317.96 in compensation for performance of his duties as Executive Chef.

conclusion that Plaintiff's performance of non-exempt work was incidental to his primary duty of management.

Upon consideration of the record in this matter, a reasonable jury could not find that plaintiff's primary duty was anything other than management. As such, there is no genuine issue of material fact in dispute and Defendant is entitled to summary judgment as to this prong of the executive exemption analysis.

### C. Plaintiff's position as Executive Chef required him to regularly and customarily direct the work of the kitchen staff.

The third prong of the executive exemption analysis requires that the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent. 29 C.F.R. 541.100(a)(3). In the instant case, Plaintiff regularly and customarily directed the work of the entire kitchen staff – well in excess of the two employee threshold. See DSMF at ¶¶ 30, 35, 64, 70; Plaintiff's Deposition, Exhibit B, at 45-49, 124, 128-30, 159-60; Miller Deposition, Exhibit D, at 63, 116-18; F&B Schedules, Exhibit T. Specifically, during Plaintiff's tenure with Defendant the following individuals, among others, were employed as full-time employees in the kitchen in various positions: (i) Jorge Reyes (sous-chef), (ii) Eddie Abrue (dishwasher), (iii) Jose Fernandez (dishwasher), (iv) Jaiwantie Singh (dishwasher), (v) Teresa Bravo (line cook), (vi) Wilmann Borgella (line cook), (vii) Angel Inamagua (line cook), (viii) Jose Quito (line cook), (ix) Nelson Perelta (line cook), and others. DSMF at ¶ 69 (Berrones Deposition, Exhibit E, at 41, 63-78; Miller Deposition, Exhibit D, at 204-205). At any given time, there were three to four employees working in the kitchen whom Plaintiff directly

---

[5] This comparison does not take into account bonuses paid to Plaintiff, for which non-exempt staff members are not eligible. See DSMF at ¶ 57, 59, 60, 62, 63; Executive Chef Bonus Program Notice, Exhibit M; Plaintiff's Deposition, Exhibit B, at 150-51; Miller Deposition, Exhibit D, at 274-76; 2013 Payroll Register, Exhibit P; 2014 Payroll Register, Exhibit Q; 2015 Payroll Register, Exhibit R; 2016 Payroll Register, Exhibit S.

supervised. See DSMF at ¶¶ 66, 67; Plaintiff's Deposition, Exhibit B, at 45-49, 64; Miller Deposition, Exhibit D, at 116-18; F&B Schedules, Exhibit T. Plaintiff himself admits that he was responsible for communicating and directing these individuals. See DSMF at ¶ 83; Plaintiff's Deposition, Exhibit B, at 79.

Moreover, when there was no Food and Beverage Manager, Plaintiff was also responsible for supervising the front-of-the-house employees, which consisted of cashiers/hostesses, bussers/runners, and bartenders. See DSMF at ¶¶ 70, 71; Plaintiff's Deposition, Exhibit B, at 128-30. As such, this prong is easily satisfied.

**D. Plaintiff's suggestions and recommendations as to the hiring and firing of kitchen employees were given particular weight.**

A bona fide executive must have the authority to hire or fire other employees or the executive's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. 29 C.F.R. 541.100(a)(4). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. 41.105. Further, the "hiring or firing or making recommendations" prong is read in the disjunctive, so plaintiff need *not* have authority to provide guidance in all areas. See, e.g., Preamble to the August 2004 U.S. Department of Labor Regulations ("An employee who provides guidance on *any one* of the specified changes in employment status may meet the section 541.100(a)(4) requirement.") (emphasis added).

In the instant case, Plaintiff admits that part of his duties included making recommendations regarding potential new hires for staff positions in the kitchen. DSMF at ¶ 72; Plaintiff's Deposition, Exhibit B, at 113-14; Berrones Deposition, Exhibit E, at 72-74. In fact,

Plaintiff admits that he was responsible for the hiring of at least two kitchen employees, Mohamad Hizam and Jaiwantie Singh. DSMF at ¶¶ 73, 74; Plaintiff's Deposition, Exhibit B, at 110-14; Miller Deposition, Exhibit D, at 120-21, 209-10; Berrones Deposition, Exhibit E, at 72-74, 90-92; December 19, 2014 Email, Exhibit U. Admittedly, because the hotel is a union shop, open positions in the kitchen did not arise very often. Nonetheless, when vacancies did exist, it was Plaintiff's responsibility to fill them. See DMSF at ¶ 72; Plaintiff's Deposition, Exhibit B, at 113-14; Berrones Deposition, Exhibit E, at 72-74.

As demonstrated herein, Plaintiff satisfied the statutory and regulatory requirements for exemption from the overtime pay requirements of the FLSA and the NYLL. Plaintiff cannot offer evidence to the contrary and Defendant Vista JFK is entitled to summary judgement on Counts I and II of Plaintiff's Complaint.

### III.   PLAINTIFF'S STATUTORY CLAIM FOR WAGE NOTICE VIOLATION UNDER NYLL FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF ADMITS THAT HE TIMELY RECEIVED ALL WAGES OWED TO HIM

In addition to his claims against Defendant for alleged overtime violations under the FLSA and NYLL, Plaintiff also raises a claim for a statutory wage notice violation under NYLL 195 (1). See Complaint, Exhibit A, ¶¶ 56-58. This claim must also be dismissed as a matter of law because Plaintiff's own testimony establishes that the statutorily enumerated affirmative defense of timely and complete payment applies.

NYLL section 195 (1)(a) requires "[e]very employer: to provide his or her employees, :in writing . . . at the time of hiring," a notice containing the following information:

> [T]he rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a). The employer must then "obtain from the employee a signed and dated written acknowledgement ... of receipt of this notice." Id. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay." Id.

However, there is no liability where an employee has timely received all compensation owed to him, as set forth in the complete affirmative defense contained in NYLL 198 (1-b):

> In any action or administrative proceeding to recover damages for violation of paragraph (a) of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article […]

NYLL § 198(1-b).

In the instant case, regardless of whether Plaintiff was provided the statutorily-required wage notice, any such technical violation of the statute is immaterial because Plaintiff admitted that he received timely payment of his wages, every Friday, for the entirety of his employment with Defendant, and that these payments were always in the correct amount owed to him. DSMF at ¶ 56 (Plaintiff's Deposition, Exhibit B, at 38-40). As a matter of law, therefore, Defendant cannot be held liable for any statutory notice violation because the statutory affirmative defense of complete and timely payment under NYLL 198(1-b) applies. Based on the foregoing, no reasonable jury could return a verdict in favor of Plaintiff in light of the clear application of the affirmative defense, such that Defendant is entitled to summary judgment as to Count III.

## CONCLUSION

**WHEREFORE,** Defendant respectfully requests that its motion for summary judgment be granted, that the Complaint be dismissed in its entirety, that judgment be entered for the Defendant, and that Defendant be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated: July 27, 2018
   New York, New York

        Respectfully Submitted,

        GORDON REES SCULLY
        MANSUKHANI, LLP


       By:  /s/ Christopher A. Seacord  
         Mercedes Colwin
         Christopher A. Seacord
         One Battery Park Plaza
         New York, New York 10004
         Phone: (212) 269-5500
         Fax: (212) 269-5505
         mcolwin@grsm.com
         cseacord@grsm.com

         *Attorneys for Defendant*

1134860/39374079v.1