UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mohamed Elghourab,<br><br>                    Plaintiff,<br><br>          v.<br><br>Vista JFK, LLC,<br><br>                    Defendant. | **17-cv-911 (ARR) (ST)**<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

This is an action by Mohamed Elghourab ("plaintiff" or "Elghourab") for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). Plaintiff was employed as a chef at a hotel restaurant owned by defendant Vista JFK, LLC ("defendant" or "Vista JFK"). Vista JFK has moved for summary judgment on the grounds that plaintiff is exempt from receiving overtime payments under the executive exemption to the FLSA. The question of whether Elghourab is an exempt executive turns on whether he was a manager responsible for overseeing the kitchen and its employees. For the following reasons, defendant's motion for summary judgment is denied.

## I.    Evidentiary Objections

As a preliminary matter, Elghourab objects to Vista JFK's reliance on various exhibits, namely business records, emails, and documents prepared by deceased Vista JFK general manager ("GM") Pierre Merhej ("Merhej"). *See* Pl.'s Resp. to Def.'s 56.1 Statement of Undisputed Facts 1–3, ECF No. 40-1 ("Elghourab 56.1 Resp."); Pl.'s Mem. of Law in Opp'n Def.'s Mot. Summ. J. 2–3, ECF No. 40 ("Elghourab Opp'n"). The Federal Rules of Evidence

govern the admissibility of evidence with respect to this motion for summary judgment. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). I will address each objection in turn.

### A. Business Records

Plaintiff first objects to the introduction of exhibits H, T, U, X, Y, Z, and AA on the grounds that they are inadmissible as business records. *See* Elghourab Opp'n 3.[1] Under the business-records exception to the hearsay rule, business records are admissible if a "custodian or another qualified witness" testifies that the records were "kept in the course of a regularly conducted [business] activity" and that it was the regular practice of that business to keep such records. Fed. R. Evid. 803(6). "[A]t the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial . . . ." *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 379 (S.D.N.Y. 2004) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)). In this case, Vista JFK has provided no such affidavit and simply alleges that the documents will be authenticated by a records custodian at trial. *See* Reply Mem. of Law in Further Supp. Def.'s Mot. Summ. J. 4 ("Vista Reply"), ECF No. 42. Thus, I do not consider exhibits H, T, and AA.[2]

### B. Emails

In order for documentary evidence such as emails to be admissible, the evidence must first be authenticated, i.e., the party offering the evidence must provide "a rational basis for

---

[1] Whereas exhibits H (meeting minutes), T (staff schedules), and AA (leave requests) would clearly be admissible business records if properly authenticated, exhibits U, X, Y, and Z are emails that are not business records. *See* Christopher A. Seacord Decl. in Supp. Def.'s Mot. Summ. J. ("Seacord Decl."), ECF No. 37-1. I thus deal with these groups of exhibits separately.

[2] Plaintiff appears to object to the use of exhibits L and K on the same grounds. *See* Elghourab 56.1 Resp. ¶¶ 54–55. Because these documents have not been properly authenticated, I do not consider them. I note, however, that defendant's apparent purpose in introducing these documents is to demonstrate plaintiff's salary increases, which plaintiff does not dispute. *See id.*

concluding that an exhibit is what it is claimed to be." *See Jay Dees Inc. v. Def. Tech. Sys., Inc.*, No. 05 Civ. 6954(SAS), 2008 WL 4501652, at *6 (S.D.N.Y. Sept. 30, 2008) (quoting *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992)), *aff'd sub nom. Scotto v. Brady*, 410 F. App'x 355 (2d Cir. 2010). Emails can be authenticated through direct or circumstantial evidence. *See United States v. Gasperini*, No. 16-CR-441 (NGG), 2017 WL 3140366, at *4–5 (E.D.N.Y. July 21, 2017), *aff'd*, 729 F. App'x 112 (2d Cir. 2018). Defense exhibits X, Y, and Z contain emails from the email address "chef@jfkradisson.com." *See* Seacord Decl., Exs. X–Z, ECF Nos. 37-24–37-26. Elghourab testified that this email address belonged to him. *See* Keith E. Williams Decl., Ex. 1 ("Elghourab Dep."), ECF No. 40-4, at 96:5–97:9; *see also* Elghourab 56.1 Resp. ¶ 32. I am thus satisfied that the emails have been sufficiently authenticated. *See United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) (considering the fact that the email address belonged to the alleged author as circumstantial evidence that the emails were sufficiently authenticated); *Jay Dees Inc.*, 2008 WL 4501652, at *6 (noting that district courts have "broad discretion" in deciding whether to authenticate evidence) (quoting *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991)).

Emails must also be not hearsay or fall under a hearsay exception to be considered on summary judgment. *See, e.g.*, *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 227 (E.D.N.Y. 2009). Statements of party opponents are not hearsay. Fed. R. Evid. 801(d)(2). Because Elghourab admits that he used the email address "chef@jfkradisson.com," his emails are admissible as statements of a party opponent.[3] Defense exhibit U contains an email from HR

---

[3] The emails in exhibits X and Z contain business records, namely staff schedules, hours, and tips. If statements are not being offered for their truth, then they are not hearsay. Fed. R. Evid. 801(c)(2). In this case, the business records in exhibits X and Z are not being offered for their truth (i.e., to demonstrate employees' schedules, hours worked, and tips earned) but rather to show that plaintiff prepared these documents and sent them to the Human Resources ("HR") department and to the GM. *See* Def.'s Local Rule 56.1 Statement ¶ 79, ECF No. 38 ("Vista 56.1"). They are therefore admissible for that purpose.

manager Salma Berrones to Elghourab with a resume she "believe[s]" he was "looking for."

Seacord Decl., Ex. U, ECF No. 37-22. Exhibit U is being offered for its truth, i.e., to demonstrate

that Elghourab was looking for a resume to evaluate. *See* Vista 56.1 ¶ 73 (citing exhibit U as

evidence that plaintiff was responsible for hiring the individual to whom the resume belonged). It

is therefore hearsay, and because it does not fall under any hearsay exception, I do not consider

it.

### C. Merhej Documents

Plaintiff further objects to defense exhibit W (an email from Merhej to Elghourab

critiquing his work on the launch of the hotel galley[4]) and defense exhibit BB (a performance

evaluation of Elghourab conducted by Merhej) on the grounds that the documents lack a proper

foundation, are hearsay, and are prejudicial to Elghourab. *See* Elghourab 56.1 Resp. 2–3. These

documents constitute hearsay because they are being offered to prove the truth of matters

asserted therein, i.e., plaintiff's job responsibilities. *See* Vista 56.1 ¶ 76 (citing exhibit W as

evidence that "[p]laintiff was responsible for organizing, planning, and ultimately launching the

new restaurant galley menu"); *id.* ¶ 84 (alleging that "[p]laintiff's job responsibilities were set

forth in his performance evaluation," exhibit BB). They are also not admissible under any

exception to the hearsay rule, and I therefore decline to consider them.[5]

---

Although the business records in exhibits H, T, and AA (*see supra* note 1) are arguably not being offered for their truth but rather to show that plaintiff attended weekly management meetings, created weekly staff schedules, and signed off on employee vacation requests, at this point the court does not have enough information to determine Vista JFK's purpose for offering these records. Further, because plaintiff concedes that he occasionally performed these duties, *see infra* Section II.A, admitting these documents would not change my determination that defendant's motion for summary judgment should be denied.

[4] The hotel galley "is a display with pre-packaged food items and beverages that customers could purchase in lieu of dining in the restaurant." Vista 56.1 ¶ 77; Elghourab 56.1 Resp. ¶ 77.

[5] As discussed above, while the performance evaluation may fall under the business-records exception to the hearsay rule, it has not been properly authenticated and is thus inadmissible.

## II. Background

The following facts are drawn from the pleadings, the defendant's Local Rule 56.1 Statement, and the parties' submissions in support of or in opposition to the defendant's summary-judgment motion. The facts cited are undisputed unless otherwise noted.[6] When considering a motion for summary judgment, the court construes the facts in the light most favorable to the nonmoving party. *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).

### A. Factual Background

Vista JFK is a hotel located near John F. Kennedy International Airport ("JFK") that caters to passengers traveling through JFK. *See* Vista 56.1 ¶ 2. Vista JFK hired Elghourab in September 2011 to work in the hotel's restaurant. *See* Elghourab 56.1 Resp. ¶ 48. The parties disagree over Elghourab's role at the restaurant. Vista JFK contends that Elghourab was hired to be the Executive Chef and that he was in charge of the kitchen and part of the hotel's management team. *See* Vista 56.1 ¶¶ 31, 48. Elghourab, on the other hand, asserts that he was only hired as a chef, that the hotel did not employ an Executive Chef, and that the hotel's food-and-beverage manager ("F&B Manager") oversaw the entire food-and-beverage department, which includes both the restaurant dining area ("front of the house") and restaurant kitchen

---

[6] Defendant contends that plaintiff has failed to comply with this court's local rules by filing excessive discovery materials and asserting additional facts in a manner that "cloud[s] the record." Vista Reply 2–4. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Though plaintiff's response to Vista JFK's 56.1 statement at times made it challenging to ascertain which facts were in dispute, *see, e.g.*, Elghourab 56.1 Resp. ¶¶ 54–55, I have reviewed the record myself to determine disputed and undisputed facts, *see, e.g.*, *Quezada v. Bakraqi*, No. 15-CV-10105 (VEC) (BCM), 2017 WL 4286646, at *6 (S.D.N.Y. Sept. 6, 2017), *adopted by* 2017 WL 4296787 (S.D.N.Y. Sept. 26, 2017), *appeal dismissed*, 2018 WL 3342874 (2d Cir. 2018). To address defendant's concern that plaintiff inappropriately filed confidential documents, I have directed the clerk's office to seal plaintiff exhibits 5, 6, 7, 8, and 9. However, I disagree with defendant's contention that the materials contained in these exhibits do not controvert a material fact, because they bear on the relationship between plaintiff's wages and the wages of nonexempt employees. *See infra* Section IV.A.ii.1.d.

("back of the house"). *See* Elghourab 56.1 Resp. ¶¶ 31, 48. According to Elghourab, he reported directly to the F&B Manager. *See id.* ¶ 52.[7]

Elghourab and the F&B Manager were the only nonunion employees in the food-and-beverage department. *Id.* ¶ 29. A collective-bargaining agreement ("CBA") and memorandum of understanding ("MOU") between Vista JFK and the New York Hotel and Motel Trades Council, AFL–CIO ("union"), govern the wages and salary increases of union employees in Vista JFK's food-and-beverage department. *See id.* ¶ 38; *see also* Seacord Decl., Ex. CC, ECF No. 37-29. Elghourab contends that these documents also dictate the "job duties, hours worked, hiring procedures, and disciplinary procedures" for the union employees. *See* Elghourab Opp'n 2.

Elghourab's undisputed responsibilities included inventorying and ordering food for the hotel kitchen, as well as ordering food for hotel banquets and the hotel galley. *See* Elghourab 56.1 Resp. ¶¶ 75–76.[8] Elghourab admits that when there was no F&B Manager, he signed off on employee vacation requests, *see* Elghourab Dep. 130:8–13, sent weekly staff schedules to HR and the GM for approval, *see id.* at 62:18–63:13; Seacord Decl., Exs. X–Z,[9] verified the accuracy of employees' reported hours for HR, *see* Elghourab 56.1 Resp. ¶ 82, generated a weekly Excel report outlining employees' earned tips, *see* Elghourab 56.1 Resp. ¶ 45; Seacord

---

[7] Vista JFK argues that Elghourab, as Executive Chef, reported directly to the hotel's GM. *See* Vista 56.1 ¶ 52. Their argument is corroborated by the hotel's organizational chart and "Executive Chef" job description. *See* Seacord Decl., Exs. F, I, ECF Nos. 37-7, 37-10. However, these documents do not necessarily reflect how the reporting structure functioned in practice. *See, e.g.*, *Carhuapoma v. N.Y.-Presbyterian Healthcare Sys., Inc.*, No. 11 Civ. 8670(JPO)(RLE), 2013 WL 1285295, at *3 n.3 (S.D.N.Y. Mar. 29, 2013) ("A job description is probative evidence, but only to the extent that it reflects an employee's actual duties."). Elghourab contends that he only reported to the GM when there was no F&B Manager. *See* Elghourab Dep. 42:7–43:13, 49:22–50:6. Construing the facts in the light most favorable to the nonmoving party, Elghourab, I assume that he reported to the F&B Manager when one was employed. Elghourab testified that throughout his employment, there were seven different F&B Managers, *see* Elghourab 56.1 Resp. ¶ 52, and that it could take up to six months to replace an F&B Manager, *see* Elghourab Dep. 53:8–15.
[8] The parties disagree over Elghourab's level of discretion with respect to these responsibilities. *See id.*
[9] Elghourab contends that because union rules dictate the schedules of union employees, he had limited discretion and authority over scheduling. *See* Elghourab 56.1 Resp. ¶ 64.

Decl., Ex. X,[10] informed employees when the kitchen was going to be inspected and helped prepare for the inspections, *see* Elghourab Dep. 78:11–79:13, and attended management meetings, *see* Elghourab Dep. 88:2–24.[11] Elghourab alleges that even if he performed some managerial duties, his daily routine was "dominated" by "non-managerial tasks," which included "prepping and cooking food, running food to the buffet, cleaning the buffet and the kitchen, restocking ice and hot water on the food tables, taking out garbage, and unclogging drain pipes." *See* Elghourab Opp'n 20.

The parties dispute whether Elghourab trained and managed kitchen employees. *See* Elghourab 56.1 Resp. ¶¶ 68, 84. However, Elghourab admits that he was responsible for ensuring the food in the kitchen was made cleanly and correctly. *See* Elghourab Dep. 262:14–264:14; *see also id.* at 262:18–20 ("[W]hen we cook the food, if I see something wrong, then I tell them, don't do this again."). With respect to hiring, Vista JFK contends that Elghourab "interviewed, recommended, and selected potential new hires for positions in the kitchen." Vista 56.1 ¶ 72. Although plaintiff denies that he participated in the hiring process, *see* Elghourab 56.1 Resp. ¶¶ 72–74, 84, he testified that he sometimes put in his opinion, *see* Elghourab Dep. 111:10–11, and that he selected Mohamed Hizam for the position of substitute cook, *see id.* at 109:12–17, 112:02–04.[12] Elghourab testified that in his five years of employment with Vista JFK, only three employees were hired in the food-and-beverage department. *See id.* at 108:04–06.

---

[10] According to Elghourab, "creating the weekly tip report merely involves data entry, to which no actual decision making is required." Elghourab 56.1 Resp. ¶ 45.

[11] Elghourab denies that he attended the meetings as a manager. *See id.* at 88:11–24 ("When there is no [F&B] manager, they have to call someone from F and B department to see if everything okay. I did go there, but when there is not manager. . . . They use me like a handyman. They don't use me as executive.")

[12] Plaintiff provided confusing testimony regarding his role in the hiring of Jaiwantie Singh as a dishwasher. He testified that he "chaired" Singh's interview with F&B Manager "Ram" and that Ram "[took his] advice," *see id.* at 113:25–114:11, but he also testified that he did not make any recommendations to Ram and that Ram alone chose and hired Singh, *see id.* at 114:12–21. Construing the facts in the light most favorable to Elghourab, I assume that he participated in Singh's interview but did not play a role in selecting her for the position.

Elghourab's starting annual salary was $55,000. Elghourab 56.1 Resp. ¶ 53. His salary was increased to $65,000 in 2014 and $69,000 in 2016. *Id.* ¶¶ 54–55. Elghourab testified that he received a bonus of $138 in connection with an April 2015 performance review but that he did not read the review, it does not accurately reflect his job responsibilities, and he does not know why he received the bonus. *See* Elghourab Dep. 147:10–156:19. Defendant's payroll records indicate that Elghourab received a $1000 bonus in 2012, *see* Seacord Decl., Ex. O, ECF No. 37-16, a $270.71 bonus in 2013, *see* Seacord Decl., Ex. P, ECF No. 37-17, a $200 bonus in 2015, *see* Seacord Decl., Ex. R, ECF No. 37-19, and a $225 bonus in 2016, *see* Seacord Decl., Ex. S, ECF No. 37-20. Elghourab denies that these bonuses were "connected to any type of non-discretionary bonus program or managerial bonus program." Elghourab 56.1 Resp. ¶¶ 59–60, 62–63. Defendant's payroll records also reveal the annual earnings of several union employees in the food-and-beverage department between 2012 and 2016: in 2012, their earnings ranged from $43,068.01 to $48,639.16; in 2013, their earnings ranged from $46,390.12 to $54,217.19; in 2014, their earnings ranged from $47,925.22 to $55,678.14; in 2015, their earnings ranged from $45,842.53 to $64,633.43; and in 2016, their earnings ranged from $50,126.34 to $59,771.50. *See* Williams Decl., Exs. 5–9, ECF Nos. 40-8–40-12.

## B. Procedural Background

On February 17, 2017, Elghourab filed a complaint against Vista JFK for unpaid overtime wages under the FLSA and NYLL. *See* Compl. ¶ 1, ECF No. 1. Elghourab contends that he worked between 70 and 84 hours per week while working full-time at Vista JFK, *see id.* ¶¶ 16, 21, 26,[13] and that Vista JFK failed to properly compensate him for this work, *see id.* ¶ 34. Vista JFK has moved for summary judgment dismissing plaintiff's claims on the grounds that

---

[13] Elghourab testified that in 2016, he reduced his hours to 50–60 hours per week and was working "part time." Elghourab Dep. 60:6–15. Vista JFK has no record of the hours Elghourab worked. *See* Elghourab 56.1 Resp. ¶ 40.

Elghourab was employed as an "executive" and is thus not subject to the overtime provisions of the FLSA and NYLL. *See* Mem. of Law Supp. Def.'s Mot. Summ. J. 1, ECF No. 39 ("Vista Mot. Summ. J."). Elghourab opposes this motion. *See* Elghourab Opp'n. For the reasons stated in this opinion, defendant's motion for summary judgment is denied.

## III.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and ellipsis omitted) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the nonmoving

party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## IV.  Discussion

### A. Defendant's motion for summary judgment dismissing plaintiff's claim for overtime wages is denied, because plaintiff does not fall under the executive exemption as a matter of law.

#### i.  FLSA and Its Exemptions

Under the FLSA, employers are required to pay employees overtime compensation for all time worked in excess of 40 hours per week, unless the employee falls under an enumerated exemption. 29 U.S.C. § 207(a)(1).[14] Because the FLSA is a remedial act, its exemptions are to be narrowly construed, and the employer bears the burden of demonstrating that an employee falls under a specific exemption. *See Ramos*, 687 F.3d at 558 (citing *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)); *Carhuapoma*, 2013 WL 1285295, at *6 (citing *Martin*, 949 F.2d at 614).

#### ii.  The Executive Exemption

The FLSA exemptions include "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The FLSA does not define what it means to work in an

---

[14] The NYLL also mandates overtime pay and contains the same exemptions as the FLSA. The Second Circuit thus engages in a single analysis under the FLSA to resolve both FLSA and NYLL claims, and I will do the same here. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78 (2d Cir. 2003); *Awan v. Durrani*, No. 14-cv-4562 (SIL), 2015 WL 4000139, at *9 (E.D.N.Y. July 1, 2015); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013); *see also* Vista Mot. Summ. J. 4; Elghourab Opp'n 13 n.59.

"executive capacity" but instead directs the Secretary of Labor to "define and delimit" that term

through regulations. *See Ramos*, 687 F.3d at 559 (citing § 213(a)(1)); *Tamayo v. DHR Rest. Co.*,

No. 14 Civ. 9633 (GBD), 2017 WL 532460, at *5 (S.D.N.Y. Feb. 3, 2017) (citing *Ramos*, 687

F.3d at 559). The Department of Labor ("the DOL") has defined "employee employed in a bona

fide executive capacity" to mean any employee who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (2016). The question of whether an employee falls under the executive

exemption is a mixed question of fact and law—i.e., how the employee spent his time working is

a question of fact, while whether the employee's activities exclude him from overtime benefits is

a question of law. *See Ramos*, 687 F.3d at 558 (first citing *Myers v. Hertz Corp.*, 624 F.3d 537,

548 (2d Cir. 2010); then citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986));

*Tamayo*, 2017 WL 532460, at *5 (citing *Ramos*, 687 F.3d at 558); *Carhuapoma,* 2013 WL

1285295, at *7 (first citing *Myers*, 624 F.3d at 548; then citing *Icicle Seafoods*, 475 U.S. at 714).

"Because whether an employee is exempt from the overtime pay provisions is a fact intensive

inquiry, even where there has been full discovery, courts are often reluctant to grant summary

judgment based on an exemption." *Carhuapoma,* 2013 WL 1285295, at *7 (citations, brackets,

and internal quotation marks omitted). The parties agree that element (1) is satisfied, *see, e.g.*,

Elghourab Opp'n 13 n.58, but they disagree over the applicability of elements (2), (3), and (4). I

address each element in turn.

### 1. Primary Duty of Management

The DOL regulations define "management" to include a range of activities, such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The DOL regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs.." 29 C.F.R. § 541.700(a). The regulations provide the following list of nonexclusive factors to be considered in determining whether an employee's primary duty is management: (1) the amount of time spent on exempt versus nonexempt work; (2) "the employee's relative freedom from direct supervision"; (3) "the relative importance of the [employee's] exempt duties as compared with other types of duties"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

### a. Amount of Time Spent on Exempt Work

The amount of time an employee spends performing exempt work "can be a useful guide in determining whether exempt work is the primary duty of an employee." § 541.700(b). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," *id.*, but employees who spend less than 50 percent of their time on exempt work may still fall under the executive exemption if other factors

support such a conclusion. *See Tamayo*, 2017 WL 532460, at *6 (citing § 541.700(b));

*Carhuapoma,* 2013 WL 1285295, at *9–10 (noting that exempt executives tend to have

discretion over when they perform nonexempt duties and the ability to perform managerial and

nonmanagerial duties concurrently). In *Tamayo*, the court found summary judgment improper

when "the record [was] notably absent of any affirmative explicit statements from either party

with regard to the actual number of hours . . . that Plaintiffs spent performing exempt or non-

exempt work." 2017 WL 532460, at *9, *11.

Plaintiff contends that his daily schedule was "dominated" by "non-managerial tasks,"

Elghourab Opp'n 20, an inference he is entitled to on summary judgment. *See Scott v. SSP Am.,

Inc.*, No. 09-CV-4399 (RRM)(VVP), 2011 WL 1204406, at *10 (E.D.N.Y. Mar. 29, 2011). As in

*Tamayo*, neither party asserts a number of hours that Elghourab spent on managerial tasks. *See,

e.g.*, Elghourab Opp'n 20 ("Defendant's witnesses testified [only] that Plaintiff spent about

fifteen or twenty minutes verifying time records and meeting with the HR Manager for payroll,

and thirty minutes twice per week meeting with the Controller to go over inventory."). While

Elghourab admits that he performed some managerial duties, particularly when there was no

F&B Manager, s*ee supra* Section II.A, he provides no details on how much of his time these

duties consumed. The parties also dispute whether Elghourab was responsible for managing

kitchen employees. *See* Elghourab 56.1 Resp. ¶¶ 68, 84. There is simply not enough information

in the record to determine how much time Elghourab spent on exempt vs. nonexempt duties.

This factor therefore weighs neither in favor of nor against a finding that Elghourab's primary

duty was management.

### b. Relative Freedom from Supervision

An employee who is free from supervision is more likely to be a manager. While Elghourab admits that he performed some managerial tasks, particularly when there was no F&B Manager, *see supra* Section II.A, "[e]mployees may not be exempt, even if they perform managerial tasks, if they 'd[o] so largely pursuant to the dictates of immutable corporate policy or at the behest of the . . . Manager to whom [they] report[ ],'" *Carhuapoma,* 2013 WL 1285295, at *10 (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F.Supp.2d 285, 288 (E.D.N.Y.2010)). As a preliminary matter, the parties dispute whether Elghourab reported to the GM or the F&B Manager; however, I assume that he reported to the F&B Manager when there was one. *See supra* note 7. In this case, Elghourab contends that his managerial duties were performed almost entirely "pursuant to the dictates" of the MOU and CBA between Vista JFK and the union, or "at the behest" of management. *See, e.g.*, Elghourab 56.1 Resp. ¶ 84. The deposition testimony of defendant's witnesses supports plaintiff's claim that hotel operations were heavily controlled by union rules. *See id.* However, "an employee can be exempt even if his discretion is 'circumscribed' by a guidebook or supervisor, as long as, despite the circumscription, 'judgments must still be made' by that employee." *Carhuapoma,* 2013 WL 1285295, at *10 (quoting *Donovan v. Burger King Corp.*, 675 F.2d 516, 521–22 (2d Cir. 1982)).

Elghourab asserts that he made no judgments with respect to scheduling (*see* Elghourab 56.1 Resp. ¶ 64), ordering and menu setting (*see id.* ¶¶ 75–76), hiring (*see id.* ¶¶ 72–74, 84), and disciplining employees (*see id.* ¶¶ 68, 84). While Elghourab's testimony indicates that he indeed had some discretion over these tasks, *see, e.g.*, Elghourab Dep. 259:9–260:25 (testifying that he would order food based on what the restaurant needed); *id.* at 111:10–11, 112:2–4 (noting that he sometimes put in his opinion regarding new hires and once selected a substitute cook); *id.* at

246:12–20, 262:14–264:14 (stating that he once told an employee not to use his phone and would correct cooks if he saw them doing something wrong), the level of discretion he exercised remains disputed and unclear. *See supra* Section II.A. Thus, this factor also weighs neither in favor of nor against a finding that Elghourab's primary duty was management.

### c. Relative Importance of Exempt Duties

In determining whether an employee's managerial duties were more important to the defendant than the employee's nonmanagerial duties, courts in the Second Circuit have looked at whether the business could operate successfully without the employee performing the purported managerial functions. *See, e.g.*, *Tamayo*, 2017 WL 532460, at *6. In the context of a restaurant, "[t]he relative importance inquiry evaluates whether the restaurant[] could not operate successfully unless the purported managerial functions assigned to [the] Head Chef, such as determining amounts of food to be prepared, keeping track of inventory, and assigning employees to particular jobs, were performed." *Id.* Because the relative importance of an employee's exempt and nonexempt duties is a fact-specific inquiry, numerous courts have declined to make this determination at the summary-judgment stage. *See id.*; *see also* *Carhuapoma*, 2013 WL 1285295, at *11 (citing *Indergit v. Rite Aid. Corp.*, Nos. 08 Civ. 9361(PGG) and 08 Civ. 11364(PGG), 2010 WL 1327242, at *7 (S.D.N.Y. Mar. 31, 2010)).

Vista JFK argues that "without Plaintiff determining what food and other supplies were needed, ordering those supplies on a regular basis, and setting the weekly schedules, the restaurant would have come to a grinding halt." Vista Mot. Summ. J. 11–12. Elghourab notes that the employee schedules and kitchen inventory levels were predetermined, and he contends that any managerial duties he performed while there was no F&B Manager were "routine, recurrent, [and] repetitive" and thus do not qualify him as an exempt employee. *See* Elghourab

Opp'n 19–20. While the parties dispute the level of discretion Elghourab exercised, his own testimony suggests that he was responsible for keeping the kitchen properly stocked, *see, e.g.*, Elghourab Dep. 259:9–260:25,[15] and ensuring that it ran smoothly, *see id.* at 262:14–264:14.[16] These responsibilities suggest that plaintiff's managerial duties were important to defendant. *See, e.g.*, *Tamayo*, 2017 WL 532460, at *8 (noting that plaintiff's testimony that he was responsible for keeping the restaurant clean, stocked, and organized supported defendant's contention that plaintiff's "most critical and important duty" was "to make sure that all aspects of the Kitchen [ran] smoothly, efficiently, and effectively"). Further, the undisputed tasks that Elghourab performed when there was no F&B Manager, such as getting schedules approved, verifying the accuracy of employees' hours, calculating employees' tips, and attending management meetings, *see supra* Section II.A, were clearly important to the operations of the restaurant. However, while it appears that Elghourab was without an F&B Manager for significant periods of time, *see, e.g.*, Elghourab 56.1 Resp. ¶ 71, Elghourab Dep. 53:8–15, the fact that another employee could and did perform these managerial tasks weighs against the importance of Elghourab's managerial duties. *See, e.g.*, *Tamayo*, 2017 WL 532460, at *9 ("[O]ther employees could have also performed some of [plaintiff's] supervisory duties, rendering those duties less important."); *see also* 29 C.F.R. § 541.106(c) ("[A] working supervisor whose primary duty is performing nonexempt work . . . does not become exempt merely because the nonexempt . . . employee occasionally has some responsibility for directing the work of other nonexempt . . . employees when, for example, the exempt supervisor is unavailable."). Further, Elghourab maintains that his daily routine was dominated by nonmanagerial tasks. *See* Elghourab Opp'n 20. Ultimately,

---

[15] Elghourab testified that he ordered vegetables once or twice per week depending on when they spoiled and that he would order food from one of two vendors based on what the restaurant needed. *See id.*

[16] Elghourab testified that he was responsible for making sure the food was cooked cleanly and correctly. *See id.*

while the record does suggest that Elghourab's managerial duties were important, "factual issues remain concerning the relative importance of [his] managerial and non-managerial work, again weighing against summary judgment." *Carhuapoma,* 2013 WL 1285295, at *12.

### d. Plaintiff's Salary vs. Salary of Nonexempt Employees

If an employee makes more money than nonexempt employees, he is more likely to be a manager. When comparing a plaintiff's salary to the salaries of nonexempt employees, courts often reduce the allegedly exempt employee's weekly salary to an hourly rate of pay based on the actual number of hours worked. *See, e.g.*, *Tamayo*, 2017 WL 532460, at *9; *Carhuapoma,* 2013 WL 1285295, at *12; *Clougher*, 696 F. Supp. 2d at 293. Assuming plaintiff worked between 50 and 84 hours per week, he was making an hourly wage of $12.59–$26.54 while working at Vista JFK between 2013 and 2016, while nonexempt union employees were making an hourly wage of $22.33–$26.89 during the same time period. *See* Elghourab Opp'n 22–24. Thus, this factor appears to weigh against plaintiff's primary duty being management.[17]

### e. Conclusion

After analyzing the record, I conclude that disputes and uncertainty over plaintiff's day-to-day activities, level of supervision, and salary preclude a determination that his primary duty was management as a matter of law.

### 2. Directing the Work of Two or More Employees

Element three of the executive-exemption test requires the exempt employee to "customarily and regularly direct the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). According to the DOL, "[t]he phrase 'customarily and regularly' means greater

---

[17] To the extent that Vista JFK disputes the number of hours worked by Elghourab, *see, e.g.*, Vista Reply 13 (alleging that "[plaintiff] converts his salary to his purported 'hourly wage' using nothing more than his bald and unsupported assertion that he worked 50–84 hours per week"), this factual dispute weighs against a determination that plaintiff's primary duty was management as matter of law.

than occasional but less than constant; it includes work normally done every workweek, but does not include isolated or one-time tasks."[18] Although Elghourab testified that he would correct cooks if they were doing something wrong in the kitchen, *see* Elghourab Dep. 262:18–20, he also denies that he ever disciplined an employee or gave someone a written warning, *see id.* at 246:6–11. *But see id.* at 246:12–20 (admitting that he once told an employee not to use his phone). Further, Elghourab contends that all the employees in the food-and-beverage department, including kitchen employees, reported directly to the F&B Manager. *See* Elghourab Opp'n 25. While defendant alleges that Elghourab "regularly and customarily directed the work of the entire kitchen staff," Vista Mot. Summ. J. 17, defendant has offered no testimony of restaurant employees and no concrete examples of Elghourab directing the work of restaurant employees. Thus, there is not enough information in the record to determine whether plaintiff customarily and regularly directed the work of two or more employees. *See Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 534 (E.D.N.Y. 2015) ("[T]his conflicting testimony [regarding Plaintiff's authority over kitchen staff] presents a genuine issue of material fact that precludes the Court from finding as a matter of law that the Plaintiff satisfies the third factor.").

### 3.  Recommendations Given Particular Weight

An exempt executive must have "the authority to hire or fire other employees," or the executive's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" must be given "particular weight." 29 C.F.R. § 541.100(a)(4). In determining whether an employee's recommendations carry "particular weight," courts are to consider whether the recommendations are part of the employee's job duties, and the frequency with which such recommendations are made and relied upon.

---

[18] U.S. Dep't of Labor, *Fact Sheet #17B: Exemption for Executive Employees Under the Fair Labor Standards Act (FLSA)* (July 2008), https://www.dol.gov/whd/overtime/fs17b_executive.pdf.

§ 541.105; *see also id.* (noting that an occasional suggestion is insufficient to meet the "particular weight" requirement). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

Although Elghourab disputes Vista JFK's contention that he interviewed, recommended, and selected employees, *see* Elghourab 56.1 Resp. ¶ 72, the record suggests that Elghourab was involved in interviewing or selecting two of the three kitchen employees who were hired during his employment, *see* Elghourab Dep. 112:2–4, 113:25–114:11. Elghourab also testified that he sometimes put in his opinion with respect to new hires. *Id.* at 111:10–11. While an occasional suggestion does not typically satisfy the fourth factor, *see, e.g.*, *Karropoulos*, 128 F. Supp. 3d at 535, the fact that Elghourab was involved in the majority of hiring decisions, even if he was not the ultimate decisionmaker, does imply that his suggestions were given particular weight.

### iii. Conclusion

Although plaintiff's hiring recommendations may have carried particular weight, I am unable to conclude that plaintiff's primary duty was management or that he directed the work of two or more employees. Thus, I cannot say that he falls under the executive exemption as a matter of law, and defendant's motion for summary judgment on this ground is denied. *See Tamayo*, 2017 WL 532460, at *11 ("Although Defendants have established there exist no genuine issue of material fact as to the fourth prong of the executive exemption test, there exist genuine issues of material fact regarding whether [plaintiff's] primary duties were managerial in nature. Therefore, Defendants have failed to carry their burden to establish that [plaintiff] is exempt under the FLSA.").

**B. Defendant's motion for summary judgment dismissing plaintiff's statutory wage-notice-violation claim is denied.**

In addition to his claim for unpaid overtime wages, Elghourab has brought a statutory claim for wage-notice violations under NYLL section 195(1), alleging that Vista JFK failed to provide him with wage notices containing the information required by NYLL section 195(1). *See* Compl. ¶ 56. Vista JFK has moved for summary judgment to dismiss this claim on grounds that NYLL section 198(1-b) provides an affirmative defense when an employer can prove that it made timely and accurate payments to the employee. *See* Vista Mot. Summ. J. 2, 19–20. Vista JFK argues that because Elghourab testified that he received timely payment of his wages every Friday, Vista JFK has an affirmative defense to NYLL section 195(1) liability. *See id.* As Elghourab correctly argues, while he admits to receiving a weekly paycheck that accurately reflected his annual base salary, this lawsuit stems from his contention that he was entitled to overtime wages on top of his annual base salary. *See* Elghourab Opp'n 27–28 ("If Plaintiff is found to be nonexempt, then Defendant was required to pay him overtime compensation each week of his employment, which they admittedly did not do"). Because I decline to make a summary-judgment determination regarding plaintiff's exempt status and thus the accuracy of his paychecks, I must also deny defendant's motion for summary judgment dismissing plaintiff's wage-notice-violation claims.

## V. Conclusion

For the reasons stated in this opinion, disputed issues of material fact preclude a determination that Elghourab falls under the executive exemption as a matter of law. Accordingly, defendant's motion for summary judgment is denied.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     November 27, 2018
           Brooklyn, New York